Barry I. Levy (BL 2190)
Michael A. Sirignano (MS 5263)
Joshua D. Smith (JS 3989)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY COMPANY,

Plaintiffs,

-against-

JING LUO ACUPUNCTURE P.C., Z. M. S. & Y ACUPUNCTURE P.C., Y & Z CARE FIRST ACUPUNCTURE P.C., CXY CARE ACUPUNCTURE P.C., NY CARE ACUPUNCTURE P.C., XU HEALTH CARE ACUPUNCTURE P.C., K.H.Y. CARE ACUPUNCTURE P.C., CHUN XIAN YU, L.AC.,

-and-

VIKTORIYA KESELMAN also known as VICTORIA KESELMAN, VITAS BILLING SERVICES INC., ZEP ENTERPRISES, INC., and JOHN DOE DEFENDANTS 1-10,

Defendants.
-----------------------------------------------------------------------X

Docket No.:_______ (      )

**Plaintiff Demands a Trial by Jury**

## COMPLAINT

Plaintiffs, Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company (collectively "GEICO" or "Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as follows:

## NATURE OF THE ACTION

1. This action seeks to recover more than $1,170,000.00 that the Defendants wrongfully obtained from GEICO by submitting, and causing to be submitted, thousands of fraudulent no-fault insurance charges relating to bogus acupuncture treatment (collectively the "Fraudulent Services"), allegedly provided to New York automobile accident victims insured by GEICO ("Insureds"). The Fraudulent Services were provided – to the extent they were provided at all – pursuant to the dictates of unlicensed laypersons who illegally owned and controlled seven professional corporations: Jing Luo Acupuncture P.C. ("Jing Luo Acupuncture"), Z. M. S. & Y Acupuncture P.C. ("ZMS&Y Acupuncture"), Y & Z Care First Acupuncture P.C. ("Y&Z Acupuncture"), CXY Care Acupuncture P.C. ("CXY Acupuncture"), NY Care Acupuncture P.C. ("NY Care Acupuncture"), Xu Health Care Acupuncture P.C. ("Xu Acupuncture"), and K.H.Y. Care Acupuncture P.C. ("KHY Acupuncture") (collectively the "Provider Defendants").

2. The Provider Defendants purport to be seven separate professional health corporations all owned on paper by Chun Xian Yu, L.Ac. ("Yu"); however, none of them have ever been legitimately owned by Yu or any other licensed medical professional, and none of them have ever been lawfully licensed and legally operating. In fact, though Yu is listed as the record owner of each Provider Defendant, Yu never actually provided services for any of the Provider Defendants or engaged in the practice of acupuncture through any of the professional corporations. Yu was rarely – if ever – present in the United States during the time the Provider Defendants were operating.

3. The Provider Defendants have, in fact, been truly owned and controlled by unlicensed laypersons, who used them to operate from a series of multi-disciplinary healthcare clinics where, in return for payments for referrals and/or kickbacks, the Provider Defendants were given access to Insureds in order to perform, or purport to perform, the Fraudulent Services and financially enrich themselves by exploiting the Insureds' no-fault insurance benefits.

4. In addition to seeking recovery of the monies stolen from it, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $840,000.00 in pending no-fault insurance claims that have been submitted by or on behalf of the Provider Defendants, because:

(i) The Provider Defendants were fraudulently incorporated and/or unlawfully owned and controlled by unlicensed laypersons and, therefore, were ineligible to bill for or to collect No-Fault Benefits;

(ii) the Fraudulent Services were provided pursuant to predetermined treatment and billing protocols imposed by unlicensed laypersons, without regard for genuine patient care;

(iii) the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO;

(iv) the Fraudulent Services were provided pursuant to a scheme to defraud employing illegal kickback, fee-splitting, and referral arrangements between the Defendants and unlicensed laypersons;

(v) the Fraudulent Services were provided by independent contractors, rather than by the Provider Defendants' employees in violation of the law; and

(vi) the Fraudulent Services were provided through professional corporations that were ineligible to bill for or to collect no-fault benefits because they were nominally owned on paper by a licensed professional who did not actually practice through the professional corporations she purported to own.

The Defendants fall into the following categories:

(i) The Provider Defendants are professional corporations through which the Fraudulent Services purportedly were performed and billed to insurance companies, including GEICO.

(ii) Yu is a licensed acupuncturist who falsely purported to own the Provider Defendants.

(iii) Defendants Viktoriya Keselman also known as Victoria Keselman ("Keselman"), Vitas Billing Services Inc. ("Vitas Billing"), Zep Enterprises, Inc. ("Zep Enterprises"), and John Doe Defendants 1-10 (collectively the "Management Defendants") illegally own and control the Provider Defendants, engaged in illegal kickback, fee splitting and referral relationships as part of the fraudulent scheme, and directed the Provider Defendants' predetermined treatment and billing protocols, imposed without regard for genuine patient care.

5. As discussed below, Defendants at all relevant times have known that: (i) the Provider Defendants were fraudulently incorporated and/or unlawfully owned and controlled by unlicensed laypersons and, therefore, were ineligible to bill for or to collect No-Fault Benefits; (ii) the Fraudulent Services were provided – to the extent they were provided at all – pursuant to predetermined treatment and billing protocols imposed by unlicensed laypersons, without regard to genuine patient care; (iii) the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO; (iv) the Fraudulent Services were provided – to the extent they were provided at all – pursuant to a scheme to defraud employing kickback, fee-splitting and unlawful referral arrangements between and among the Defendants and unlicensed persons; (v) the Fraudulent Services were provided by independent contractors, rather than by the Provider Defendants' employees and, therefore, were not eligible for reimbursement; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through professional corporations that were ineligible to bill for or to collect no-fault benefits because they were nominally owned on paper by a licensed professional who did not actually practice through the professional corporations she purported to own.

6. As such, the Defendants do not now have – and never had – any right to be compensated for the Fraudulent Services that have been billed to GEICO through the Provider Defendants.

7. The charts annexed hereto as Exhibits "1" – "7" set forth the fraudulent claims that have been identified to-date that the Defendants have submitted, or caused to be submitted, to GEICO.

8. The Defendants' fraudulent scheme, directed at GEICO and all New York automobile insurers, began as early as 2011 and has continued uninterrupted through present day. As a result of the Defendants' scheme, GEICO has incurred damages of more than $1,170,000.00.

## THE PARTIES

### I. Plaintiffs

9. Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. are Maryland corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in New York.

10. Defendant Yu resides in and is a citizen of New York. Yu was licensed to practice acupuncture in New York on March 27, 1997, and purports to own the Provider Defendants.

11. Defendant Jing Luo Acupuncture is a New York acupuncture professional corporation with its principal place of business at 2807 172nd Street, Flushing, New York, through which the Fraudulent Services have been billed to GEICO.

12. Jing Luo Acupuncture was incorporated on May 2, 2011.

13. Jing Luo Acupuncture is nominally owned on paper by Yu, but in actuality has been fraudulently owned and controlled by unlicensed laypersons in contravention of New York law.

14. Defendant ZMS&Y Acupuncture is a New York acupuncture professional corporation with its principal place of business at 2807 172nd Street, Flushing, New York, through which the Fraudulent Services have been billed to GEICO.

15. ZMS&Y Acupuncture was incorporated on February 4, 2013.

16. ZMS&Y Acupuncture is nominally owned on paper by Yu, but in actuality has been fraudulently owned and controlled by unlicensed laypersons in contravention of New York law.

17. Defendant Y&Z Acupuncture is a New York acupuncture professional corporation with its principal place of business at 2807 172nd Street, Flushing, New York, through which the Fraudulent Services have been billed to GEICO.

18. Y&Z Acupuncture was incorporated on August 15, 2013.

19. Y&Z Acupuncture is nominally owned on paper by Yu, but in actuality has been fraudulently owned and controlled by unlicensed laypersons in contravention of New York law.

20. Defendant CXY Acupuncture is a New York acupuncture professional corporation with its principal place of business at 2807 172nd Street, Flushing, New York, through which the Fraudulent Services have been billed to GEICO.

21. CXY Acupuncture was incorporated on January 6, 2015.

22. CXY Acupuncture is nominally owned on paper by Yu, but in actuality has been fraudulently owned and controlled by unlicensed laypersons in contravention of New York law.

23. Defendant NY Care Acupuncture is a New York acupuncture professional corporation with its principal place of business at 2807 172nd Street, Flushing, New York, through which the Fraudulent Services have been billed to GEICO.

24. NY Care Acupuncture was incorporated on January 6, 2015.

25. NY Care Acupuncture is nominally owned on paper by Yu, but in actuality has been fraudulently owned and controlled by unlicensed laypersons in contravention of New York law.

26. Defendant Xu Acupuncture is a New York acupuncture professional corporation with its principal place of business at 2807 172nd Street, Flushing, New York, through which the Fraudulent Services have been billed to GEICO.

27. Xu Acupuncture was incorporated on January 6, 2015.

28. Xu Acupuncture is nominally owned on paper by Yu, but in actuality has been fraudulently owned and controlled by unlicensed laypersons in contravention of New York law.

29. Defendant KHY Acupuncture is a New York acupuncture professional corporation with its principal place of business at 2807 172nd Street, Flushing, New York, through which the Fraudulent Services have been billed to GEICO.

30. KHY Acupuncture was incorporated on November 17, 2015.

31. KHY Acupuncture is nominally owned on paper by Yu, but in actuality has been fraudulently owned and controlled by unlicensed laypersons in contravention of New York law.

32. Defendant Keselman resides in and is a citizen of New York. Keselman has never been a licensed healthcare professional, yet owned, controlled, and derived economic benefit from the Provider Defendants, engaged in illegal kickback, fee splitting and referral relationships

as part of the fraudulent scheme, and dictated the predetermined treatment and billing protocols, without regard for genuine patient care.

33. Defendant Vitas Billing is a New York corporation with its principal place of business in New York.

34. Vitas Billing was incorporated on June 17, 2010, is owned and/or controlled by Keselman, and purports to be the billing company for several of the Provider Defendants.

35. In actuality, Vitas Billing has been used to illegally own and control the Provider Defendants, to siphon revenues from the Provider Defendants to unlicensed laypersons, and to dictate the predetermined treatment and billing protocols, without regard for genuine patient care.

36. Defendant Zep Enterprises is a New York corporation with its principal place of business in New York.

37. Zep Enterprises was incorporated on March 30, 2009, is owned and/or controlled by Keselman, and purports to be the billing company for several of the Provider Defendants.

38. In actuality, Zep Enterprises has been used to illegally own and control the Provider Defendants, to siphon revenues from the Provider Defendants to unlicensed laypersons, and to dictate the predetermined treatment and billing protocols, without regard for genuine patient care.

39. Upon information and belief, John Doe Defendants 1-10 reside in and are citizens of New York. John Doe Defendants 1-10 are individuals and entities, presently not identifiable, who are not and never have been licensed healthcare professionals, yet – together with Keselman, Vitas Billing, and Zep Enterprises – have owned, controlled, and derived economic benefit from the Provider Defendants in contravention of New York law, engaged in illegal

kickback, fee splitting and referral relationships as part of the fraudulent scheme, and directed the Provider Defendants' predetermined treatment and billing protocols, without regard for genuine patient care.

## JURISDICTION AND VENUE

40. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Pursuant to 28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act) because they arise under the laws of the United States. In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

41. Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

### I. An Overview of the No-Fault Laws and Licensing Statutes

42. GEICO underwrites automobile insurance in New York.

43. New York's no-fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the health care services that they need. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65,

et seq.) (collectively referred to as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

44. No-Fault Benefits include up to $50,000.00 per Insured for necessary expenses that are incurred for healthcare goods and services, including physician services, chiropractic services, physical therapy services, and acupuncture services.

45. An Insured can assign his/her right to No-Fault Benefits to health care goods and services providers in exchange for those services. Pursuant to a duly executed assignment, a health care provider may submit claims directly to an insurance company and receive payment for medically necessary services, using the claim form required by the New York State Department of Insurance (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or, more commonly, as an "NF-3"). In the alternative, a healthcare provider may submit claims using the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form").

46. Pursuant to the No-Fault Laws, professional corporations are not eligible to bill for or to collect No-Fault Benefits if they are unlawfully incorporated or fail to meet any New York State or local licensing requirements necessary to provide the underlying services.

47. The implementing regulation adopted by the Superintendent of Insurance, 11 N.Y.C.R.R. § 65-3.16(a)(12) states, in pertinent part, as follows:

> A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York … .

48. In New York, only a licensed healthcare professional may: (i) practice the pertinent healthcare profession; (ii) own and control a professional corporation authorized to operate a professional healthcare practice; (iii) employ and supervise other healthcare professionals; and (iv)

absent statutory exceptions not applicable in this case, derive economic benefit from healthcare professional services. Unlicensed individuals may not: (i) practice the pertinent healthcare profession; (ii) own or control a professional corporation authorized to operate a professional healthcare practice; (iii) employ or supervise healthcare professionals; or (iv) absent statutory exceptions not applicable in this case, derive economic benefit from professional healthcare services.

49. New York law prohibits licensed healthcare providers from paying or accepting kickbacks in exchange for patient referrals; prohibits aiding and abetting an unlicensed person to practice a profession; prohibits offering any fee or consideration to a third party for the referral of a patient; and prohibits permitting any person not authorized to practice medicine to share in the fees for professional services.

50. Therefore, under the No-Fault Laws, a healthcare provider is not eligible to receive No-Fault Benefits if it is fraudulently incorporated, fraudulently licensed, if it engages in unlawful fee-splitting with unlicensed non-professionals, or if it pays or receives unlawful kickbacks in exchange for patient referrals.

51. In State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320 (2005), the New York Court of Appeals confirmed that healthcare providers that fail to comply with licensing requirements are ineligible to collect No-Fault Benefits, and that insurers may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law.

52. Pursuant to the No-Fault Laws, only healthcare services providers in possession of a direct assignment of benefits are entitled to bill for and collect No-Fault Benefits. There is both a statutory and regulatory prohibition against payment of No-Fault Benefits to anyone other than the

patient or his/her healthcare services provider. The implementing regulation adopted by the Superintendent of Insurance, 11 N.Y.C.R.R. § 65-3.11, states – in pertinent part – as follows:

> An insurer shall pay benefits for any element of loss … directly to the applicant or ... upon assignment by the applicant ... shall pay benefits directly to providers of healthcare services as covered under section five thousand one hundred two (a)(1) of the Insurance Law …

53. Accordingly, for a healthcare provider to be eligible to bill for and to collect charges from an insurer for healthcare services pursuant to Insurance Law § 5102(a), it must be the actual provider of the services. Under the No-Fault Laws, a professional corporation is not eligible to bill for services, or to collect for those services from an insurer, where the services were rendered by persons who were not employees of the professional corporation, such as independent contractors.

54. In New York, claims for No-Fault Benefits are governed by the New York Workers' Compensation Fee Schedule (the "NY Fee Schedule")

55. When a healthcare service provider submits a claim for No-Fault Benefits using the current procedural terminology ("CPT") codes set forth in the NY Fee Schedule, it represents that: (i) the service described by the specific CPT code that is used was performed in a competent manner in accordance with applicable laws and regulations; (ii) the service described by the specific CPT code that is used was reasonable and medically necessary; and (iii) the service and the attendant fee were not excessive.

56. Pursuant to New York Insurance Law § 403, the NF-3s and HCFA-1500 Forms submitted by a healthcare provider to GEICO, and to all other automobile insurers, must be verified by the health care provider subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information

concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

## II. <u>The Defendants' Fraudulent Scheme</u>

57. Beginning in mid-2011, Defendants masterminded and implemented a series of interrelated, complex fraudulent schemes wherein the Provider Defendants – owned on paper by Yu, but actually illegally owned and controlled by the Management Defendants – were used to bill GEICO and the New York automobile insurance industry for millions of dollars in no-fault insurance benefits they were never entitled to receive.

58. In or about early 2011, the Management Defendants commenced a search for a licensed acupuncturist who would be willing to sell the use of his or her professional license to the Management Defendants so that the Management Defendants could fraudulently incorporate a series of acupuncture professional corporations under the licensed acupuncturist's name. The Management Defendants sought to purchase the use of the professional acupuncture license in order to submit large-scale fraudulent no-fault billing to New York no-fault insurers.

59. Beginning in mid-2011, the Management Defendants recruited Yu, a licensed acupuncturist, who was willing to sell to the Management Defendants the use of her professional license, so that the Management Defendants could fraudulently incorporate the Provider Defendants.

60. The Provider Defendants did not advertise or market their services to the general public.

61. The Provider Defendants were not the owners or leaseholders of the real property from which they purported to provide the Fraudulent Services, and instead operated from multiple multidisciplinary healthcare clinics, (the "Clinics"), where the owners and controllers of the

Clinics arranged for Insureds who presented to the Clinics to be referred to the Provider Defendants in exchange for payments, i.e., kickbacks, from the Management Defendants.

62. Yu did nothing to aid the start-up of the "practices" operated under her name at the Clinics.

63. Yu did not advertise for patients, never sought to build name recognition or make any legitimate efforts of her own to attract patients on behalf of any of the Provider Defendants.

64. Yu did not have her own patients, and did nothing to create or cultivate a patient base for any of the Provider Defendants.

65. Yu never actually practiced acupuncture through any of the Provider Defendants.

66. Yu spent a significant portion of her time since 2011 living in China.

54. As part of the scheme, the Defendants instituted a treatment protocol, often grounded on fabricated exams and reports, that sought to fraudulently justify repeated and excessive acupuncture treatment, without regard to the Insured's actual condition.

67. In keeping with the fact that the Provider Defendants were all operated under the ownership and control of the Management Defendants and that the Defendants' treatment and billing protocol was instituted by unlicensed laypersons: (i) virtually every Insured was provided with the same treatment program, resulting in virtually the same billing submissions; and (ii) the acupuncture examination reports for each of the Provider Defendants contained nonsensical, verbatim discussions inexplicably referring to chiropractic "spinal manipulative therapy" and repeatedly referencing treatment durations at odds with the billing submitted.

**A. The Fraudulent Incorporation of the Provider Defendants**

68. In-mid 2011, the Management Defendants recruited Yu, a licensed acupuncturist who was willing to sell them the use of her acupuncture license so that they could fraudulently incorporate Jing Luo Acupuncture, ZMS&Y Acupuncture, Y&Z Acupuncture, CXY Acupuncture, NY Care Acupuncture, Xu Acupuncture, and KHY Acupuncture.

69. In order to circumvent New York law and to induce the New York State Education Department (the "Education Department") to issue certificates of authority authorizing Jing Luo Acupuncture, ZMS&Y Acupuncture, Y&Z Acupuncture, CXY Acupuncture, NY Care Acupuncture, Xu Health, and KHY Acupuncture to operate acupuncture practices, the Management Defendants entered into a secret scheme with Yu.

70. In exchange for a designated salary or other form of compensation from the Management Defendants, Yu agreed to falsely represent in the certificates of incorporation filed with the Education Department, and other filings with New York state, that she was the true shareholder, director, and officer of Jing Luo Acupuncture, ZMS&Y Acupuncture, Y&Z Acupuncture, CXY Acupuncture, NY Care Acupuncture, Xu Acupuncture, and KHY Acupuncture, and that she truly owned, controlled, and practiced through the professional corporations.

71. Yu did this knowing that the professional corporations would be used to submit fraudulent billing to insurers.

72. Once the Provider Defendants were fraudulently incorporated, Yu ceded true beneficial ownership and control over the professional corporations to the Management Defendants.

73. The Management Defendants – rather than Yu – provided all start-up costs and investment in the Provider Defendants.

74. Yu did not incur any costs to establish the Provider Defendants' practices, nor did she invest any money of her own in the professional corporations she purportedly owned.

75. Upon fraudulent incorporation, the Management Defendants caused the Provider Defendants to commence operations from at least three different multi-disciplinary no-fault clinics by paying kickbacks and/or entering into illegal fee splitting arrangements with the owners and controllers of those clinics in exchange for patient referrals to the Provider Defendants.

76. Yu never was the true shareholder, director, or officer of any of the Provider Defendants, and never had any true ownership interest in or control over any of the professional corporations. True ownership and control over the Provider Defendants always rested entirely with the Management Defendants, who used the façade of the Provider Defendants to do indirectly what they were forbidden from doing directly, namely: (i) employ medical professionals; (ii) control their practices; and (iii) charge for and derive an economic benefit from their services.

77. Yu exercised absolutely no control over or ownership interest in the Provider Defendants.

78. All decision-making authority relating to the operation and management of the Provider Defendants was vested entirely with the Management Defendants.

79. In addition, Yu never controlled or maintained any of the Provider Defendants' books or records, including their bank accounts; never selected, directed, or controlled any of the individuals or entities responsible for handling any aspect of the Provider Defendants' financial affairs; never hired or supervised any of Provider Defendants' employees or independent

contractors; and was completely unaware of the most fundamental aspects of how the Provider Defendants operated.

80. In keeping with Yu's "sale" of her acupuncture license and her lack of control and ownership over any of the Provider Defendants, Yu's name and license were used to incorporate numerous acupuncture professional corporations, including the following:

| PROFESSIONAL CORPORATION | DATE OF INCORPORATION |
|---|---|
| Y & W Acupuncture PLLC | September 25, 2001 |
| RC Acupuncture PLLC | October 16, 2002 |
| Family Care Acupuncture PLLC | February 9, 2006 |
| Best Health Care Acupuncture P.C. | September 6, 2007 |
| Jing Luo Acupuncture P.C. | May 2, 2011 |
| Z.M.S. & Y Acupuncture P.C. | February 4, 2013 |
| Y & Z Care First Acupuncture P.C. | August 15, 2013 |
| CXY Care Acupuncture P.C. | January 6, 2015 |
| NY Care Acupuncture P.C. | January 6, 2015 |
| Xu Health Care Acupuncture P.C. | January 6, 2015 |
| K.H.Y. Care Acupuncture P.C. | November 17, 2015 |
| Queens Care Acupuncture P.C. | January 13, 2016 |

81. As shown above, Yu purportedly incorporated eight separate acupuncture professional corporations since 2011, despite spending a significant portion of her time since 2011 living in China.

82. As further shown above, Yu purportedly incorporated three separate acupuncture professional corporations on January 6, 2015 alone, i.e., Defendants CXY Acupuncture, NY Care Acupuncture, and Xu Acupuncture.

## B. The Management Defendants' Efforts to Conceal their Ownership and Control of the Provider Defendants

### 1. The Sham Management, Billing, Marketing, and/or Lease Agreements

83. To conceal their true ownership and control of the Provider Defendants while simultaneously effectuating pervasive, total control over their operation and management, the

Management Defendants arranged to have Yu and the Provider Defendants enter into a series of "management", "billing", "marketing", and/or "lease" agreements with themselves. These agreements called for exorbitant payments from the Provider Defendants to the Management Defendants purportedly for the performance of certain designated services including management, marketing, billing, and/or collections, regardless of the actual value of the services or space provided.

84. While these agreements ostensibly were created to permit the Management Defendants to provide "management", "billing", and "marketing" services, and/or facility space and equipment, they actually were used solely as a tool to permit the Management Defendants to: (i) control the day-to-day operations, exercise supervisory authority over, and illegally own the Provider Defendants; and (ii) to siphon all of the profits that were generated by the billings submitted to GEICO and other insurers through the Provider Defendants.

85. The net effect of these "management", "billing", "marketing", and/or "lease" agreements amongst Yu, the Provider Defendants, and the Management Defendants was to maintain the Provider Defendants in a constant state of debt to the Management Defendants, thereby enabling the Management Defendants to maintain total control over the professional corporations, their accounts receivables, and any revenues that might be generated therefrom.

86. In keeping with the Management Defendants' control over the Provider Defendants, it was Keselman (the supposed biller), rather than Yu, who responded to GEICO's requests for information regarding the Provider Defendants.

**2. The Provider Defendants' Shifting Corporate Identities**

87. In order to avoid detection and to increase the amount of fraudulent billing they could submit to GEICO and other insurers, the Management Defendants caused Yu to

incorporate multiple professional corporations, so that no one Provider Defendant would submit more than a threshold amount of billing.

88. In addition, once GEICO began to inquire into the operations of a particular Provider Defendant by requesting an examination under oath ("EUO") of the Provider pursuant to New York no-fault regulations, the Management Defendants would cause that Provider Defendant to cease billing GEICO, and would begin to submit billing through a more recently incorporated Provider Defendant.

89. The Management Defendants would then cause the newer Provider Defendant to submit billing to GEICO using the same fraudulent testing and billing protocol used by the previous professional corporation. Notwithstanding the repeated changes in corporate name, the Provider Defendants – under the direction and control of the Management Defendants – all billed for the same services under the same CPT codes, used the same forms, and operated out of the same Clinics.

90. By consistently changing corporate identities, the Management Defendants assured that GEICO could not further inquire into the questionable corporate structure or treatment and billing practices of any one particular Provider Defendant.

**a. The New York Ave Clinic**

91. ZMS&Y Acupuncture purported to treat patients out of a multidisciplinary clinic located at 1611 East New York Avenue, Brooklyn, New York (the "New York Ave Clinic") beginning in March 2013.

92. In January 2015, in response to EUO requests and investigative inquiries by GEICO, ZMS&Y Acupuncture ceased treating patients.

93. Within a few days, Xu Acupuncture – a new professional corporation formed under Yu's acupuncture license – began to treat patients at the New York Ave Clinic using the same treating acupuncturists and the same predetermined treatment and billing protocol as ZMS&Y Acupuncture.

**b. The Merrick Road Clinic**

94. Y&Z Acupuncture purported to treat patients out of a multidisciplinary clinic located at 40 East Merrick Road, Valley Stream, New York (the "Merrick Road Clinic") beginning in September 2013.

95. In February 2015, in response to EUO requests and investigative inquiries by GEICO, Y&Z Acupuncture ceased treating patients.

96. Within a day or two, NY Care Acupuncture – a new professional corporation formed under Yu's acupuncture license – began to treat patients at the Merrick Road Clinic using the same treating acupuncturists and the same predetermined treatment and billing protocol as Y&Z Acupuncture.

97. In late September 2015, in response to EUO requests and investigative inquiries by GEICO, NY Care Acupuncture ceased treating patients.

98. Within a few weeks, KHY Acupuncture – a new professional corporation formed under Yu's acupuncture license – began to treat patients at the Merrick Road Clinic using the same treating acupuncturists and the same predetermined treatment and billing protocol as NY Care Acupuncture and Y&Z Acupuncture.

**c. The Graham Ave Clinic**

99. Jing Luo Acupuncture purported to treat patients out of a multidisciplinary clinic located at 104 Graham Avenue, Brooklyn, New York (the "Graham Ave Clinic") beginning in April 2011.

100. In January 2015, in response to EUO requests and investigative inquiries by GEICO, Jing Luo Acupuncture ceased treating patients.

101. Within a few weeks, CXY Acupuncture – a new professional corporation formed under Yu's acupuncture license – began to treat patients at the Graham Ave Clinic using the same treating acupuncturists and the same predetermined treatment and billing protocol as Jing Luo Acupuncture.

102. In December 2015, in response to EUO requests and investigative inquiries by GEICO, CXY Acupuncture ceased treating patients.

103. Within a couple weeks, a new professional corporation nominally owned by a new licensed acupuncturist – not Yu – began to treat patients at the Graham Ave Clinic.

104. In keeping with the fact that the acupuncture professional corporations at the Clinics – including the Provider Defendants – were operated under the ownership and control of the Management Defendants and that the Defendants' treatment and billing protocol was instituted by unlicensed laypersons, the new professional corporation purported to treat patients at the Graham Ave Clinic using the same treating acupuncturists and the same predetermined treatment and billing protocol as Jing Luo Acupuncture and CXY Acupuncture.

105. The Management Defendants' unlawful ownership and control of the Provider Defendants compromised patient care, because the provision of health services through the Provider Defendants was entirely subject to the pecuniary interests of their non-medical

layperson owners and controllers, not the independent medical judgment of true medical professional-owners.

**C. The Multidisciplinary Clinics and Kickbacks**

106. The Provider Defendants did not advertise or market their services to the general public and were not the owners or leaseholders of the real property from which they purported to provide the Fraudulent Services.

107. Instead, the Provider Defendants operated from a series of multidisciplinary clinics, i.e., the Clinics, including, but not limited to, the following locations:

(i) 1611 East New York Avenue, Brooklyn, New York

(ii) 40 East Merrick Road, Valley Stream, New York

(iii) 104 Graham Avenue, Brooklyn, New York

108. The owners and controllers of the Clinics arranged for Insureds who presented to the Clinics to be referred to the Provider Defendants in exchange for kickbacks from the Management Defendants.

109. The kickbacks that the Management Defendants provided to the Clinic owners and controllers were disguised as ostensibly legitimate fees to "rent" space or personnel from the Clinics. In actuality, these were "pay-to-play" arrangements that caused the Clinics to steer Insureds to the Provider Defendants, with the amount of the fees based upon the volume of Insureds that were expected to be referred to the Provider Defendants for "treatment".

110. In keeping with the fact that the purported leases were part of "pay-to-play" referral arrangements and not the result of legitimate business negotiations: (1) the leases completely failed to identify or describe the premises being leased, including even the address of the Clinic; (2) the leases completely failed to describe the common areas – including treatment

areas, reception area, and bathrooms – that were shared with the numerous medical providers operating from the Clinics; and (3) the leases contained numerous spelling and grammatical errors.

111. The subleases were shams, as they existed solely to create the appearance of a legitimate landlord/tent or sublessor/sublessee relationship between the Provider Defendants and the Clinics.

112. In exchange for the kickbacks from the Management Defendants, when an Insured visited one of the Clinics, he or she automatically was referred to one of the Provider Defendants for bogus acupuncture treatment, regardless of the Insured's individual symptoms or presentation.

113. The referrals typically were made by a receptionist or some other non-medical personnel at the Clinics who simply directed or "steered" the Insureds to whichever Provider Defendant was active and present at the Clinic during that time period.

**D. Yu's Absentee Ownership and Failure to Practice through the Provider Defendants**

114. The billing submitted to GEICO for services allegedly provided through the Provider Defendants was fraudulent for the additional reason that it misrepresented that the Provider Defendants were lawfully licensed and eligible to bill for and to collect No-Fault Benefits, when in fact the Provider Defendants were owned on paper by a licensed healthcare professional who did not actually practice through the professional corporations she purported to own, in violation of New York law.

115. New York Business Corporation Law §1507 makes clear that a licensed professional shareholder of a professional corporation must be engaged in the practice of the

designated profession through the professional corporation for it to be lawfully licensed. In particular, Section 1507 provides, in pertinent part, as follows:

> Issuance of shares
>
> A professional service corporation may issue shares only to individuals who are authorized by law to practice in this state a profession which such corporation is authorized to practice and who are or have been engaged in the practice of such profession in such corporation…or who will engage in the practice of such profession in such corporation within thirty days of the date such shares are issued … . All shares issued, agreements made, or proxies granted in violation of this section shall be void.

116. Legislative history confirms that the owner of a professional corporation, such as an acupuncture professional corporation, not only must be licensed to practice the profession but must also be engaged in the practice of the profession in the professional corporation. For example, in commenting on the proposed amendment to Section 1507 in 1971, the New York State Education Department stated:

> This bill amends the Business Corporation Law in relation to the operation of professional service corporations. While this bill allows more flexibility in the ownership and transfer of professional service corporation stock, it maintains the basic concept of restricting ownership to professionals working within the corporation.

117. Similarly, the New York Department of State commented that:

> Section 1507 currently limits issuance of shares in such corporation to persons licensed by this State to practice the profession which the corporation is authorized to practice and who so practice in such corporation or a predecessor entity.
>
> The bill would add a third category of person eligible to receive stock, one who will practice such profession "within 30 days of the date such shares are issued."

118. New York's Department of Health was of the same opinion, commenting that:

> The bill would amend Article 15 of the Business Corporation Law pertaining to professional service corporations to allow the issuance of shares of individuals who will engage in the practice of the profession within 30 days of the date such shares are issued, in addition to those presently so engaged…. (Emphasis added.)

119. Despite the fact that Yu purported to own all seven Provider Defendants, she rarely – if ever – performed any acupuncture services through any of the Provider Defendants.

120. Despite the fact that Yu purported to own all seven Provider Defendants, she rarely – if ever – was actually present at any of the Clinics utilized by the Provider Defendants.

121. In fact, on multiple occasions, GEICO investigators were repeatedly told by Keselman and individuals present at the Clinics during site inspections that Yu was in China.

122. Despite purporting to own all seven of the Provider Defendant, GEICO's investigation revealed that Yu was rarely – if ever – present in the United States, and therefore could not have actually practiced through the professional corporations.

**E. The Defendants' Fraudulent Acupuncture Treatment and Billing Protocol**

123. Regardless of the nature or severity of the injuries to the Insureds, or absence of injuries, the Defendants purported to subject virtually every Insured to a course of acupuncture treatment that was provided pursuant to a predetermined, fraudulent treatment and billing protocol designed to maximize the billing that Defendants could submit through the Provider Defendants to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to it.

124. This predetermined, fraudulent protocol was frequently grounded on fabricated exams and reports used to support excessive and medically unnecessary acupuncture services not warranted by the Insured's individual symptoms, presentation, or response to treatment.

**1. Legitimate Acupuncture Practices**

125. Acupuncture is predicated upon the theory that there are twelve main meridians ("the Meridians") in the human body through which energy flows. Every individual has a unique energy flow ("Chi").

126. When an individual's unique Chi becomes disrupted or imbalanced for any reason (such as trauma), needles can be inserted or pressure can be applied to very specific points ("Acupuncture Points") along the Meridians to remove the disruption or imbalance and restore the patient's unique Chi.

127. The goal of any legitimate acupuncture treatment is to effectively treat and benefit the patient by restoring his or her unique Chi, relieving his or her symptoms, and returning him or her to normal activity.

128. The first step in any legitimate acupuncture treatment is a physical examination of the patient.

129. A component of this examination includes examination of the appearance of the patient's tongue (i.e., color, shape, texture, etc.) and various measurements of the patient's pulse (i.e., rate, rhythm, strength, etc.).

130. The information gleaned from these elements of the physical examination assists with the diagnosis of the patient's condition and thereby helps develop an acupuncture treatment plan designed to benefit the patient by restoring his unique Chi.

131. In cases involving trauma, an actual physical examination also is appropriate to identify the location of the injury and consequent pain and – by extension – to identify the Meridians, if any, that have been disrupted.

132. The second step in any legitimate acupuncture treatment is the development of an acupuncture treatment plan.

133. In developing a legitimate treatment plan, an acupuncturist will consider both the injuries sustained by the patient, as well as the tongue and pulse information obtained during the physical examination.

134. Using this information, the acupuncturist will identify a unique, cohesive, and individualized set of Acupuncture Points into which needles can be inserted or pressure can be applied to restore the patient's Chi and address the patient's discrete injuries.

135. In developing a legitimate acupuncture treatment plan, an acupuncturist may choose from at least 360 discrete Acupuncture Points.

136. The third step in any legitimate acupuncture treatment is the implementation of the acupuncture treatment plan.

137. If legitimately performed, this step will include the use of both "local" Acupuncture Points (i.e., points near the affected areas of the relevant Meridian), and "distal" Acupuncture Points (i.e., points that are distant from the affected areas of the relevant Meridian), and typically will involve insertion of between 10 and 20 acupuncture needles into between five and 10 Acupuncture Points.

138. Within these parameters, the number and location of the Acupuncture Points generally will vary based upon the unique circumstances presented by each patient as well as each patient's individual therapeutic response to each acupuncture treatment.

139. Any legitimate acupuncture treatment plan requires a continuous assessment of the patient's condition and energy flow, as well as the therapeutic effect of previous treatments.

140. Acupuncture treatment plans are fluid and evolve over time.

141. Therefore, the goal of any legitimate acupuncture treatment plan is to make appropriate adjustments as treatment progresses in order to improve the therapeutic effectiveness of each treatment, and eventually to return the patient to maximum health by restoring his or her unique energy flow.

142. Any legitimate acupuncture treatment requires meaningful documentation of the: (i) physical examination; (ii) diagnosis; (iii) treatment plan; (iv) results of each session; and (v) the patient's progress throughout the course of treatment.

**2. The Provider Defendants' Fraudulent Initial Examinations**

143. The Provider Defendants purported to begin treatment of many Insureds with an initial examination.

144. The charges for the initial examinations were fraudulent in that the examinations were performed – to the extent they were actually performed at all – pursuant to the dictates of the Management Defendants, not to treat or otherwise benefit the Insureds.

145. The charges for the initial examinations were also fraudulent in that they misrepresented the nature and extent of the initial examinations.

**a. The Fabricated Initial Examination Reports**

146. In keeping with the fact that that the initial examinations were provided pursuant to the Defendants' fraudulent treatment protocol and under the direction and control of the Management Defendants, the examinations reports submitted to GEICO through the Provider Defendants virtually all contained verbatim language that had been copied-and-pasted across hundreds of reports.

147. Notably, the examination reports submitted to GEICO through the Provider Defendants contained verbatim language for virtually every Insured, despite the fact that the

examinations were often performed by different treating acupuncturists, through different professional corporations, at different Clinics.

148. Specifically, virtually every initial examination report submitted through the Provider Defendants contained the following verbatim language, including the same grammatical idiosyncrasies:

(i) "The proposed treatment has been discussed with the patient. According to TCM (Traditional Chinese Medicine), the injury caused by the motor vehicle accident belongs to the pattern of Chi and Blood stagnation. The obstruction of flow of Chi and blood in certain meridians can cause pain, numbness, heavy sensation and swelling of the injured area."

(ii) "*Treatment*: Promote the flow of Chi (body energy) and blood, reduce swelling and relieve pain. Ashi points are used as the principle points. Local and distal points of the involved meridians may be combined with Ashi points to relax tendons and active blood circulation.
Provide symptomatic pain relief in acute and sub-acute stages of the injury/condition. Assist joint inhibition to reduce inflammatory response to affected tissues.
Reflexively subside painful muscle contraction and reactive splitting of the injured joint's intrinsic musculature, thereby reversing the pain-spasm-pain-cycle.
Decrease irritation of nerve tissue."

(iii) "I feel that there is a direct causal relationship between the accident described and patient's current injuries. His symptoms and clinical findings are consistent with musculoskeletal injuries to the described areas. At this point, the patient remains impaired with regard to some functional capabilities, as such, I would like to recommend that patient continue spinal manipulative therapy aiming to alleviate his/her pain and to prevent any further progression of his/her disability."

(iv) "We utilize only the best sterilized disposable needles available. Each patient receives 10-20 minutes of acupuncture therapy per session, 3-4 times a week. Our staff if carefully selected from only the most qualified applicants. The treating acupuncturist primarily used the Body and Auricular acupuncture techniques."

(v) "Injures sustained by the patient on [date of accident], are very complex in their presentation of soft tissue damage, neurological manifestations, psychological developments and other sequela. The patient may experience periodic exacerbations of pain for an undetermined length of time. The prognosis of the patient's condition is guarded at this time with respect to a full and complete recovery."

149. The above verbatim discussions appear in reports supposedly created by multiple different treating acupuncturists on behalf of seven acupuncture professional corporations, i.e., the Provider Defendants.

150. Notably, as shown above, the examination reports uniformly indicated that patients are provided with "10-20 minutes of acupuncture therapy per session", which is in direct conflict with the billing submitted through the Provider Defendants, which reflects that the Provider Defendants performed 45-60 minutes of acupuncture, as a matter of course.

**b. The Defendants' Misrepresentations Regarding the Nature and Extent of the Initial Examinations**

151. Furthermore, the Defendants' charges for the initial examinations were fraudulent in that they misrepresented the extent of the initial examinations.

152. Specifically, under the Fee Schedule, the use of CPT code 99203 typically requires that the Insured present with problems of moderate severity.

153. Though the Provider Defendants routinely billed for the initial examinations under CPT code 99203, the Insureds almost never presented with problems of moderate severity.

154. Furthermore, the use of CPT code 99203 typically requires that the physician spend 30 minutes of face-to-face time with the Insured or the Insured's family.

155. Though the Provider Defendants routinely billed for the initial examinations under CPT code 99203, no medical professional associated with the Provider Defendants spent 30 minutes of face-to-face time with the Insureds or their families during the initial examinations. Rather, the initial examinations rarely lasted more than 10-15 minutes, to the extent they were conducted at all.

156. In keeping with the fact that the initial examinations rarely lasted more than 10-15 minutes – to the extent they were conducted at all – the Provider Defendants used pre-printed checklist or template forms in conducting the examinations.

157. The pre-printed checklist and template forms that the Provider Defendants used in conducting the initial examinations set forth a very limited range of potential patient complaints, potential diagnoses, and treatment recommendations.

158. All that was required to complete the pre-printed checklist and template forms was a brief patient interview and a brief physical examination of the Insureds.

159. These interviews and examinations did not require any acupuncturists associated with the Provider Defendants to spend more than 10-15 minutes of face-to-face time with the Insureds during the putative initial examinations.

160. In addition, according to the Fee Schedule, when the Provider Defendants submitted charges for initial examinations under CPT code 99203 they falsely represented that they took a "detailed" patient history.

161. Pursuant to the Fee Schedule, a "detailed" patient history requires – among other things – that the healthcare provider take a (i) history of systems related to the patient's presenting problems, as well as a review of a limited number of additional systems; and (ii) a past, family, and social history from the patient to the extent that the patient's past, family, and social history is related to the patient's presenting problems.

162. Though the Provider Defendants routinely billed for the initial examinations under CPT code 99203, and thereby represented that they took "detailed" patient histories from the Insureds they purported to treat during the initial examinations, they did not take a history of systems related to the patient's presenting problems, did not conduct any review of a limited

number of additional systems, and did not take a past, family, and social history from the patient to the extent that the patient's past, family, and social history was related to the patient's presenting problems.

163. Rather, after purporting to provide the initial examinations, the Provider Defendants prepared boilerplate reports that were largely devoid of any patient histories, and simply contended that the Insureds continued to suffer from injuries they sustained in automobile accidents.

164. In keeping with the fact that the Provider Defendants submitted boilerplate examination reports that misrepresented the nature and extent of the examinations and contained verbatim language copied-and-pasted across hundreds of reports, numerous claimants interviewed by GEICO indicated that they never even received an initial examination, despite GEICO having received bills for examinations.

### 3. The Provider Defendants' Fraudulent Acupuncture Treatment

165. The Provider Defendants purported to provide acupuncture treatments that were billed to GEICO under CPT codes 97810, 97811, 97813, and 97814, among others, typically resulting in charges of between $17.57 and $22.48 for each segment of acupuncture treatment purportedly provided.

#### a. The Defendants' Failure to Comport with Basic, Legitimate Acupuncture Requirements.

166. The purported "acupuncture" services provided by the Provider Defendants did not remotely comport with any of the aforesaid basic, legitimate acupuncture requirements. Patients were treated without regard to any necessary individual treatment strategies, without regard to any necessary adjustments in treatment as treatment progresses over time, and without meaningful, genuine, and individualized documentation.

167. At best, the purported "acupuncture" services provided by the Provider Defendants consisted of inserting needles into Insureds in an assembly-line fashion that bore little, if any, relation to the Insured's condition and were not designed to effectively treat or otherwise benefit the Insureds.

168. The services billed for by the Provider Defendants also reflect a lack of independent professional acupuncture judgment and instead reflect a predetermined protocol designed to enrich the Defendants through the submission of fraudulent charges to GEICO and other insurers.

169. For instance, the number of needles used were often insufficient; the number and location of acupuncture points used were insufficient to justify the number of units billed; patients were near universally purportedly receiving up to 60 minutes of personal, one on one contact per visit, which was not supported by the alleged injuries and not adjusted to reflect the Insureds' improvement or lack thereof.

170. The Defendants' cookie-cutter approach to the acupuncture treatments that they performed, or caused to be performed, on virtually every Insured was designed solely to maximize the charges that they could submit through the Provider Defendants to GEICO and other insurers, and to maximize their ill-gotten profits.

**b. The Defendants' Misrepresentations regarding the Extent of One-on-One Contact with Insureds**

171. Additionally, the Provider Defendants routinely misrepresented and exaggerated the amount of one-on-one contact that treating acupuncturists had with each Insured per visit.

172. The New York Workers' Compensation Fee Schedule used for No-Fault billing (the "Fee Schedule") sets forth the billing codes and requirements for billing acupuncture services to insurers, as follows:

| | |
|---|---|
| 97810 | Acupuncture, one or more needles, without electrical stimulation; initial 15 minutes of personal one-on-one contact with the patient |
| 97811 | without electrical stimulation, each additional 15 minutes of personal one-on-one contact with the patient, with re-insertion of needle(s) (List separately in addition to code for primary procedure) |
| 97813 | with electrical stimulation, initial 15 minutes of personal one-on-one contact with the patient |
| 97814 | with electrical stimulation, each additional 15 minutes of personal one-on-one contact with the patient, with re-insertion of needle(s) (List separately in addition to code for primary procedure) |

173. The Provider Defendants, as a matter of course, submitted bills to GEICO that contained four separate segment charges per visit per Insured.

174. Specifically, after each visit by an Insured, the Provider Defendants would submit bills to GEICO that included a single charge under a CPT code 97810, a single charge under CPT code 97811, a single charge under CPT code 97813, and a single charge under CPT code 97814, usually totaling $77.16 per visit per Insured.

175. When the Provider Defendants submitted bills for four units of acupuncture, they represented that (i) there was an initial 15 minutes of "personal one-on-one contact with the patient" involving acupuncture without electrical stimulation; (ii) there was an additional 15 minutes of "personal one-on-one contact with the patient" with electrical stimulation and re-insertion of needles; (ii) there was then another additional 15 minutes of "personal one-on-one contact with the patient" with electrical stimulation and re-insertion of needles; and (iv) there was yet a fourth segment of "personal one-on one contact" with that same patient with re-insertion of needles.

176. The Provider Defendants' billing was plainly inflated. In reality, the Defendants rarely –if ever – spent 30 minutes of personal, one-on-one contact with each patient, let alone the amount of time represented by the use of four billing codes for one treatment session with a patient.

177. In keeping with the fact that the Defendants rarely, if ever, actually provided four segments of "one on one" contact with patient, representing up to 60 minutes of one-on-one contact as required by the CPT codes, the Provider Defendants frequently submitted more than 96 discrete acupuncture segment charges in a single day, falsely representing that a single treating acupuncturist had spent more than 24 hours of one-on-one contact with Insureds in a single day.

178. Indeed, this mathematically impossible volume of services represents only those bills submitted to GEICO on a given day, and does not take into account any bills submitted by the Provider Defendants to insurers other than GEICO.

179. To the extent the Provider Defendants actually performed acupuncture services, the treatment typically consisted of 15 minutes of acupuncture, virtually none of which involved one-on-one contact with Insureds.

180. Rather, the Provider Defendants typically placed needles in an Insured's body, set a timer, and left the Insured unattended until 15 minutes had elapsed.

181. The treatment described in the treating acupuncturist's notes for the Provider Defendants in almost all cases failed to justify the billing submitted for multiple units of personal, one-on-one contact, with re-insertion of needles.

182. The Defendants' fraudulent billing scheme misrepresented, inflated and exaggerated the level of services provided in order to inflate the charges submitted to GEICO.

### F. The Fraudulent Billing for Services Provided by Independent Contractors

183. The Defendants' fraudulent scheme also included submission of claims to GEICO seeking payment for services performed by independent contractors.

184. Under the No-Fault Laws, professional corporations are ineligible to bill for or receive payment for goods or services provided by independent contractors – the healthcare services must be provided by the professional corporations, themselves, or by their employees.

185. Since 2001, the New York State Insurance Department has consistently reaffirmed its longstanding position that professional corporations are not entitled to receive reimbursement under the No-Fault Laws for healthcare providers performing services as independent contractors. See DOI Opinion Letter, February 21, 2001 ("where the health services are performed by a provider who is an independent contractor with the PC and is not an employee under the direct supervision of a PC owner, the PC is not authorized to bill under No-Fault as a licensed provider of those services"); DOI Opinion Letter, February 5, 2002 (refusing to modify position set forth in 2-11-01 Opinion letter despite a request from the New York State Medical Society); DOI Opinion Letter, March 11, 2002 ("If the physician has contracted with the PC as an independent contractor, and is not an employee or shareholder of the PC, such physician may not represent himself or herself as an employee of the PC eligible to bill for health services rendered on behalf of the PC, under the New York Comprehensive Motor Vehicle Insurance Reparations Act…"); DOI Opinion Letter, October 29, 2003 (extending the independent contractor rule to hospitals); See DOI Opinion Letter, March 21, 2005 (DOI refused to modify its earlier opinions based upon interpretations of the Medicare statute issued by the CMS) (copies of the relevant DOI Opinion letters are annexed hereto as Exhibit "8").

186. With respect to the Fraudulent Services, the Defendants used various per diem medical professionals, because they were amenable to the scheme to perform the Fraudulent Services.

187. The Defendants treated all of the medical professionals who performed the Fraudulent Services as independent contractors and not direct employees of the Provider Defendants.

188. The medical professionals that rendered, or purported to render, services for or on behalf of the Provider Defendants worked part-time for the Provider Defendants.

189. The medical professionals that rendered, or purported to render, services for or on behalf of the Provider Defendants were not supervised by Yu when they rendered, or purported to render, services for or on behalf of the Provider Defendants.

190. The medical professionals that rendered, or purported to render, services for or on behalf of the Provider Defendants worked for, or purported to own, other healthcare providers and professional corporations besides the Provider Defendants.

191. The medical professionals that rendered, or purported to render, services for or on behalf of the Provider Defendants have included the following: Runkel Yuan, L.Ac., Sulwyn Liu, L.Ac., Xiao-Yan Jiang, L.Ac., Weicong Huang, L.Ac., and Brian Kelly, L.Ac. Many of these medical professionals worked for numerous other "practices" and/or have been listed as owners of numerous medical professional corporations.

192. Runkel Yuan, L.Ac. has purported to render services under the names of at least eleven different professional corporations and healthcare providers (three of which he purported to own) that have billed GEICO for services allegedly rendered to Insureds.

193. Sulwyn Liu, L.Ac. has purported to render services under the names of at least six different professional corporations and healthcare providers that have billed GEICO for services allegedly rendered to Insureds.

194. Xiao-Yan Jiang, L.Ac. has purported to render services under the names of at least five different professional corporations and healthcare providers (four of which she purported to own) that have billed GEICO for services allegedly rendered to Insureds.

195. Weicong Huang, L.Ac. has purported to render services under the names of at least six different professional corporations and healthcare providers that have billed GEICO for services allegedly rendered to Insureds.

196. Brian Kelly, L.Ac. has purported to render services under the names of at least six different professional corporations and healthcare providers that have billed GEICO for services allegedly rendered to Insureds.

197. Further, the Defendants:

(i) paid the medical professionals, either in whole or in part, on a 1099 basis rather than a W-2 basis;

(ii) established an understanding with the medical professionals that they were independent contractors, rather than employees;

(iii) paid no employee benefits to the medical professionals;

(iv) failed to secure and maintain W-4 or I-9 forms for the medical professionals;

(v) failed to withhold proper federal, state or city taxes on behalf of the medical professionals;

(vi) compelled the medical professionals to pay for their own malpractice insurance at their own expense;

(vii) permitted the medical professionals to set their own schedules and days on which they desired to perform services; and

(viii) permitted the medical professionals to maintain non-exclusive relationships, and to perform services and render treatments for their own practices and/or on behalf of numerous other medical professional corporations in addition to their supposed employment obligations to the Provider Defendants.

198. By electing to treat the medical professionals as independent contractors, the Defendants realized significant economic benefits – for instance:

(i) avoiding the obligation to collect and remit income tax as required by 26 U.S.C. § 3102;

(ii) avoiding payment of the FUTA excise tax required by 26 U.S.C. § 3301 (6.2 percent of all income paid);

(iii) avoiding payment of the FICA excise tax required by 26 U.S.C. § 3111 (7.65 percent of all income paid);

(iv) avoiding payment of workers' compensation insurance as required by New York Workers' Compensation Law § 10;

(v) avoiding the need to secure any malpractice insurance; and

(vi) avoiding claims of agency-based liability arising from work performed by the treating individuals and technicians.

199. Because the medical professionals were independent contractors, the Defendants never had any right to bill for or collect No-Fault Benefits in connection with the services performed by them.

200. The Defendants, however, billed for the Fraudulent Services as if they were provided by actual employees of the Provider Defendants to make it appear as if the services were eligible for reimbursement. The Defendants' misrepresentations were consciously designed to mislead GEICO into believing that it was obligated to pay for these services, when in fact GEICO was not.

**G. The Fraudulent Billing the Defendants Submitted or Caused to be Submitted to GEICO**

201. To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of NF-3 forms, HCFA-1500 forms, and testing reports through the Provider Defendants to GEICO seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment.

202. The bills and treatment reports submitted to GEICO by and on behalf of the Defendants were false and misleading in the following material respects:

(i) The bills and treatment reports uniformly misrepresented to GEICO that the Provider Defendants were lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, the Provider Defendants were not properly licensed in that they were professional corporations that were fraudulently incorporated and unlawfully owned and controlled by unlicensed laypersons, and further engaged in a scheme to defraud with unlicensed laypersons involving kickbacks, fee splitting, and illegal referral arrangements.

(ii) The bills and treatment reports submitted by and on behalf of the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and rendered in accordance with the exercise of legitimate medical judgment by licensed professionals. In fact, the Fraudulent Services were not medically necessary and were performed pursuant to predetermined fraudulent protocols controlled by laypersons and designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

(iii) The bills and treatment reports submitted by and on behalf of the Defendants uniformly misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

(iv) The bills and treatment reports submitted by and on behalf of the Defendants uniformly misrepresented that the Provider Defendants were eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.11 for the services that supposedly were performed. In fact, the Provider Defendants were not eligible to seek or pursue collection of No-Fault Benefits for the services that supposedly

were performed because the services were not provided by the Provider Defendants' employees.

(v) The bills and treatment reports submitted uniformly misrepresented to GEICO that the Provider Defendants were owned by Yu, a licensed professional who practiced through the professional corporations. In fact, Yu did not and the Provider Defendants were not eligible to seek or pursue collection of No-Fault Benefits.

## III. The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

203. The Defendants legally and ethically were obligated to act honestly and with integrity in connection with the billing that they submitted, or caused to be submitted, to GEICO.

204. To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, the Defendants systemically concealed their fraud and went to great lengths to accomplish this concealment.

205. In fact, the Defendants billed for the Fraudulent Services through multiple entities using multiple tax identification numbers in order to reduce the amount of billing submitted through any single entity or under any single tax identification number, thereby preventing GEICO from identifying the overall fraudulent scheme and the pattern of fraudulent charges submitted through the Provider Defendants.

206. Specifically, the Defendants knowingly misrepresented and concealed facts related to the Provider Defendants in an effort to prevent discovery that the Provider Defendants were fraudulently incorporated and were unlawfully owned and controlled by unlicensed laypersons.

207. The Defendants also knowingly misrepresented and concealed facts related to the fact that the Provider Defendants were involved in a scheme to defraud involving kickbacks, fee splitting, and unlawful referral arrangements

208. Furthermore, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically

unnecessary and performed pursuant to fraudulent predetermined protocols controlled by laypersons and designed to maximize the charges that could be submitted rather than to benefit the Insureds who supposedly were subjected to them.

209. The Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were performed by independent contractors and not the Provider Defendants' employees.

210. With respect to all seven Provider Defendants, the Defendants misrepresented that the nominal owner, Yu, even worked for the professional corporations, when, in fact, she did not actually practice through the professional corporations she purported to own.

211. Once GEICO began to suspect that the Provider Defendants were engaged in fraudulent billing and treatment activities, GEICO requested nearly all of the Provider Defendants to submit additional verification in accordance with the No-Fault regulations, including but not limited to, examinations under oath, to determine whether the charges submitted through the Defendants were legitimate.

212. Nevertheless, in an attempt to conceal their fraud, the Defendants systematically failed and/or refused to respond to repeated requests for verification of the charges submitted.

213. GEICO maintains standard office practices and procedures that are designed to and do ensure that no-fault claim denial forms or requests for additional verification of no-fault claims are properly addressed and mailed in a timely manner in accordance with the No-Fault Laws.

214. In accordance with the No-Fault Laws, GEICO either: (i) timely and appropriately denied the pending claims for No-Fault Benefits submitted through the Defendants; or (ii) timely issued requests for additional verification with respect to all of the pending claims for No-Fault

Benefits submitted through the defendants (yet GEICO failed to obtain compliance with the requests for additional verification), and, therefore, GEICO's time to pay or deny the claims has not yet expired.

215. The Defendants hired law firms to pursue collection of the fraudulent charges from GEICO and other insurers. These law firms routinely filed expensive and time-consuming litigation against GEICO and other insurers if the charges were not promptly paid in full.

216. GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days.

217. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and fraudulent litigation activity described above, were designed to and did cause GEICO to rely upon them.

218. As a result, GEICO incurred damages of more than $1,170,000.00 based upon the fraudulent charges.

219. Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

**FIRST CAUSE OF ACTION**
**Against All Defendants**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

220. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

221. There is an actual case in controversy between GEICO and the Defendants regarding more than $840,000.00 in fraudulent billing for the Fraudulent Services that has been submitted to GEICO through the Provider Defendants.

222. The Defendants have no right to receive payment for any pending bills submitted to GEICO because the Provider Defendants were fraudulently incorporated, and/or secretly and unlawfully owned and controlled by unlicensed individuals and entities.

223. The Defendants have no right to receive payment for any pending bills submitted to GEICO because the Provider Defendants engaged in a scheme to defraud involving kickbacks, fee-splitting, and unlawful referral arrangements with unlicensed individuals and entities and, therefore, were ineligible to bill for or to collect no-fault benefits.

224. The Defendants have no right to receive payment for any pending bills submitted to GEICO through the Provider Defendants because the Fraudulent Services were not medically necessary and were provided pursuant to predetermined fraudulent protocols controlled by laypersons and designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

225. The Defendants have no right to receive payment for any pending bills submitted to GEICO through the Provider Defendants because the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

226. The Defendants have no right to receive payment for any pending bills submitted to GEICO through the Provider Defendants because the Fraudulent Services were provided by independent contractors, rather than by the Provider Defendants' employees.

227. The Defendants have no right to receive payment for any pending bills submitted to GEICO through the Provider Defendants, because the Fraudulent Services were provided through professional corporations that were ineligible to bill for or to collect no-fault benefits because they

were nominally owned on paper by a licensed professional who did not actually practice through the professional corporations she purported to own.

228. Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the Defendants have no right to receive payment for any pending bills submitted to GEICO through the Provider Defendants.

## SECOND CAUSE OF ACTION
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

229. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

230. Jing Luo Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

231. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, knowingly have conducted and/or participated, directly or indirectly, in the conduct of Jing Luo Acupuncture's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than three and a half years seeking payments that Jing Luo Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent treatment and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to

inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "1".

232. Jing Luo Acupuncture's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 operated Jing Luo Acupuncture, inasmuch as Jing Luo Acupuncture never was eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for Jing Luo Acupuncture to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

233. Jing Luo Acupuncture is engaged in inherently unlawful acts inasmuch as its very existence is an unlawful act, considering that it was created to engage in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons in order to submit fraudulent billing to insurers. Jing Luo Acupuncture likewise is engaged in inherently unlawful acts inasmuch as it continues to attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Jing Luo Acupuncture in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

234. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $289,406.48 pursuant to the fraudulent bills submitted by the Defendants through Jing Luo Acupuncture.

235. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THIRD CAUSE OF ACTION
### Against Yu and the Management Defendants
### (Violation of RICO, 18 U.S.C. § 1962(d))

236. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

237. Jing Luo Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

238. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 are employed by and/or associated with the Jing Luo Acupuncture enterprise.

239. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Jing Luo Acupuncture enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than three and a half years seeking payments that Jing Luo Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii)

the billed-for-services were performed and billed pursuant to a predetermined, fraudulent testing and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "1".

240. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

241. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $289,406.48 pursuant to the fraudulent bills submitted by the Defendants through Jing Luo Acupuncture.

242. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**<u>FOURTH CAUSE OF ACTION</u>**
**Against Jing Luo Acupuncture, Yu, and the Management Defendants**
**(Common Law Fraud)**

243. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

244. Jing Luo Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for the Fraudulent Services.

245. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Jing Luo Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact it was unlawfully owned and controlled by unlicensed laypersons; (ii) in every claim, the representation that Jing Luo Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation engaged in in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) in every claim, the representation that Jing Luo Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation was nominally owned on paper by a licensed professional who did not actually practice through it; (iv) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Fee Schedule, when in fact the billed-for services were performed and billed pursuant to a predetermined, fraudulent protocol dictated by laypersons to

enrich the Defendants; and (v) in every claim, the representation that the billed-for services were performed by Jing Luo Acupuncture's employees, when in fact the billed-for services were performed – to the extent they were performed at all – by independent contractors.

246. Jing Luo Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Jing Luo Acupuncture that were not compensable under the No-Fault Laws.

247. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $289,406.48 pursuant to the fraudulent bills submitted by the Defendants through Jing Luo Acupuncture.

248. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

249. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION
**Against Jing Luo Acupuncture, Yu, and the Management Defendants**
**(Unjust Enrichment)**

250. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

251. As set forth above, Jing Luo Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

252. When GEICO paid the bills and charges submitted by or on behalf of Jing Luo Acupuncture for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

253. Jing Luo Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

254. Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

255. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $289,406.48.

## SIXTH CAUSE OF ACTION
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

256. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

257. ZMS&Y Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

258. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, knowingly have conducted and/or participated, directly or indirectly, in the conduct of ZMS&Y Acupuncture's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for nearly two years seeking payments that ZMS&Y Acupuncture was not eligible to receive under the No-

Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent treatment and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "2".

259. ZMS&Y Acupuncture's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 operated ZMS&Y Acupuncture, inasmuch as ZMS&Y Acupuncture never was eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for ZMS&Y Acupuncture to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

260. ZMS&Y Acupuncture is engaged in inherently unlawful acts inasmuch as its very existence is an unlawful act, considering that it was created to engage in a scheme to defraud

involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons in order to submit fraudulent billing to insurers. ZMS&Y Acupuncture likewise is engaged in inherently unlawful acts inasmuch as it continues to attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by ZMS&Y Acupuncture in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

261. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $173,942.10 pursuant to the fraudulent bills submitted by the Defendants through ZMS&Y Acupuncture.

262. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**SEVENTH CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

263. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

264. ZMS&Y Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

265. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 are employed by and/or associated with the ZMS&Y Acupuncture enterprise.

266. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the ZMS&Y Acupuncture enterprise's affairs, through a pattern of

racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for nearly two years seeking payments that ZMS&Y Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent testing and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "2".

267. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

268. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $173,942.10 pursuant to the fraudulent bills submitted by the Defendants through ZMS&Y Acupuncture.

269. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**Against ZMS&Y Acupuncture, Yu, and the Management Defendants**
**(Common Law Fraud)**

270. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

271. ZMS&Y Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for the Fraudulent Services.

272. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that ZMS&Y Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact it was unlawfully owned and controlled by unlicensed laypersons; (ii) in every claim, the representation that ZMS&Y Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) in every claim, the representation that ZMS&Y Acupuncture was

properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation was nominally owned on paper by a licensed professional who did not actually practice through it; (iv) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Fee Schedule, when in fact the billed-for services were performed and billed pursuant to a predetermined, fraudulent protocol dictated by laypersons to enrich the Defendants; and (v) in every claim, the representation that the billed-for services were performed by ZMS&Y Acupuncture's employees, when in fact the billed-for services were performed – to the extent they were performed at all – by independent contractors.

273. ZMS&Y Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through ZMS&Y Acupuncture that were not compensable under the No-Fault Laws.

274. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $173,942.10 pursuant to the fraudulent bills submitted by the Defendants through ZMS&Y Acupuncture.

275. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

276. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**NINTH CAUSE OF ACTION**
**Against ZMS&Y Acupuncture, Yu, and the Management Defendants**
**(Unjust Enrichment)**

277. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

278. As set forth above, ZMS&Y Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

279. When GEICO paid the bills and charges submitted by or on behalf of ZMS&Y Acupuncture for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

280. ZMS&Y Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

281. Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

282. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $173,942.10.

**TENTH CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

283. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

284. Y&Z Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

285. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, knowingly have conducted and/or participated, directly or indirectly, in the conduct of Y&Z Acupuncture's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for nearly a year and a half seeking payments that Y&Z Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent treatment and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "3".

286. Y&Z Acupuncture's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 operated Y&Z Acupuncture, inasmuch as Y&Z Acupuncture never was eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for Y&Z Acupuncture to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

287. Y&Z Acupuncture is engaged in inherently unlawful acts inasmuch as its very existence is an unlawful act, considering that it was created to engage in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons in order to submit fraudulent billing to insurers. Y&Z Acupuncture likewise is engaged in inherently unlawful acts inasmuch as it continues to attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Y&Z Acupuncture in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

288. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $344,893.36 pursuant to the fraudulent bills submitted by the Defendants through Y&Z Acupuncture.

289. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**ELEVENTH CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

290. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

291. Y&Z Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

292. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 are employed by and/or associated with the Y&Z Acupuncture enterprise.

293. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Y&Z Acupuncture enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for nearly a year and a half seeking payments that Y&Z Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent testing and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the

extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "3".

294. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

295. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $344,893.36 pursuant to the fraudulent bills submitted by the Defendants through Y&Z Acupuncture.

296. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**TWELFTH CAUSE OF ACTION**
**Against Y&Z Acupuncture, Yu, and the Management Defendants**
**(Common Law Fraud)**

297. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

298. Y&Z Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for the Fraudulent Services.

299. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Y&Z Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact it was unlawfully owned and controlled by unlicensed laypersons; (ii) in every claim, the representation that Y&Z Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) in every claim, the representation that Y&Z Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation was nominally owned on paper by a licensed professional who did not actually practice through it; (iv) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Fee Schedule, when in fact the billed-for services were performed and billed pursuant to a predetermined, fraudulent protocol dictated by laypersons to enrich the Defendants; and (v) in every claim, the representation that the billed-for services were performed by Y&Z Acupuncture's employees, when in fact the billed-for services were performed – to the extent they were performed at all – by independent contractors.

300. Y&Z Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Y&Z Acupuncture that were not compensable under the No-Fault Laws.

301. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $344,893.36 pursuant to the fraudulent bills submitted by the Defendants through Y&Z Acupuncture.

302. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

303. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**THIRTEENTH CAUSE OF ACTION**
**Against Y&Z Acupuncture, Yu, and the Management Defendants**
**(Unjust Enrichment)**

304. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

305. As set forth above, Y&Z Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

306. When GEICO paid the bills and charges submitted by or on behalf of Y&Z Acupuncture for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

307. Y&Z Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

308. Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

309. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $344,893.36.

**FOURTEENTH CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

310. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

311. CXY Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

312. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, knowingly have conducted and/or participated, directly or indirectly, in the conduct of CXY Acupuncture's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than a year seeking payments that CXY Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent treatment and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were

performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "4".

313. CXY Acupuncture's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 operated CXY Acupuncture, inasmuch as CXY Acupuncture never was eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for CXY Acupuncture to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

314. CXY Acupuncture is engaged in inherently unlawful acts inasmuch as its very existence is an unlawful act, considering that it was created to engage in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons in order to bill for fraudulent services. CXY Acupuncture likewise is engaged in inherently unlawful acts inasmuch as it continues to attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by CXY Acupuncture in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

315. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $42,367.77 pursuant to the fraudulent bills submitted by the Defendants through CXY Acupuncture.

316. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FIFTEENTH CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

317. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

318. CXY Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

319. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 are employed by and/or associated with the CXY Acupuncture enterprise.

320. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the CXY Acupuncture enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than one year seeking payments that CXY Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the

billed-for-services were performed and billed pursuant to a predetermined, fraudulent testing and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "4".

321. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

322. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $42,367.77 pursuant to the fraudulent bills submitted by the Defendants through CXY Acupuncture.

323. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**<u>SIXTEENTH CAUSE OF ACTION</u>**
**Against CXY Acupuncture, Yu, and the Management Defendants**
**(Common Law Fraud)**

324. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

325. CXY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for the Fraudulent Services.

326. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that CXY Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact it was unlawfully owned and controlled by unlicensed laypersons; (ii) in every claim, the representation that CXY Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation engaged in in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) in every claim, the representation that CXY Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation was nominally owned on paper by a licensed professional who did not actually practice through it; (iv) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Fee Schedule, when in fact the billed-for services were performed and billed pursuant to a predetermined, fraudulent protocol dictated by laypersons to

enrich the Defendants; (v) in every claim, the representation that the billed-for services were performed by CXY Acupuncture's employees, when in fact the billed-for services were performed – to the extent they were performed at all – by independent contractors.

327. CXY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through CXY Acupuncture that were not compensable under the No-Fault Laws.

328. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $42,367.77 pursuant to the fraudulent bills submitted by the Defendants through CXY Acupuncture.

329. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

330. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SEVENTEENTH CAUSE OF ACTION
**Against CXY Acupuncture, Yu, and the Management Defendants**
**(Unjust Enrichment)**

331. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

332. As set forth above, CXY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

333. When GEICO paid the bills and charges submitted by or on behalf of CXY Acupuncture for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

334. CXY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

335. Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

336. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $42,367.77.

**EIGHTEENTH CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

337. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

338. NY Care Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

339. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, knowingly have conducted and/or participated, directly or indirectly, in the conduct of NY Care Acupuncture's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for two and a half years seeking payments that NY Care Acupuncture was not eligible to receive under the No-

Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent treatment and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "5".

340. NY Care Acupuncture's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 operated NY Care Acupuncture, inasmuch as NY Care Acupuncture never was eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for NY Care Acupuncture to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

341. NY Care Acupuncture is engaged in inherently unlawful acts inasmuch as its very existence is an unlawful act, considering that it was created to engage in in a scheme to defraud

involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons in order to submit fraudulent billing to insurers. NY Care Acupuncture likewise is engaged in inherently unlawful acts inasmuch as it continues to attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by NY Care Acupuncture in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

342. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $90,651.97 pursuant to the fraudulent bills submitted by the Defendants through NY Care Acupuncture.

343. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**NINETEENTH CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

344. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

345. NY Care Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

346. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 are employed by and/or associated with the NY Care Acupuncture enterprise.

347. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the NY Care Acupuncture enterprise's affairs, through a pattern of

racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for two and a half years seeking payments that NY Care Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent testing and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "5".

348. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

349. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $90,651.97 pursuant to the fraudulent bills submitted by the Defendants through NY Care Acupuncture.

350. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**TWENTIETH CAUSE OF ACTION**
**Against NY Care Acupuncture, Yu, and the Management Defendants**
**(Common Law Fraud)**

351. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

352. NY Care Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for the Fraudulent Services.

353. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that NY Care Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact it was unlawfully owned and controlled by unlicensed laypersons; (ii) in every claim, the representation that NY Care Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation engaged in in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) in every claim, the representation that NY Care Acupuncture was

properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation was nominally owned on paper by a licensed professional who did not actually practice through it; (iv) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Fee Schedule, when in fact the billed-for services were performed and billed pursuant to a predetermined, fraudulent protocol dictated by laypersons to enrich the Defendants; and (v) in every claim, the representation that the billed-for services were performed by NY Care Acupuncture's employees, when in fact the billed-for services were performed – to the extent they were performed at all – by independent contractors.

354. NY Care Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through NY Care Acupuncture that were not compensable under the No-Fault Laws.

355. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $90,651.97 pursuant to the fraudulent bills submitted by the Defendants through NY Care Acupuncture.

356. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

357. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TWENTY-FIRST CAUSE OF ACTION**
**Against NY Care Acupuncture, Yu, and the Management Defendants**
**(Unjust Enrichment)**

358. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

359. As set forth above, NY Care Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

360. When GEICO paid the bills and charges submitted by or on behalf of NY Care Acupuncture for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

361. NY Care Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

362. Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

363. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $90,651.97.

**TWENTY-SECOND CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

364. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

365. Xu Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

366. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, knowingly have conducted and/or participated, directly or indirectly, in the conduct of Xu Acupuncture's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than ten months seeking payments that Xu Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent treatment and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "6".

367. Xu Acupuncture's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 operated Xu Acupuncture, inasmuch as Xu Acupuncture never was eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for Xu Acupuncture to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

368. Xu Acupuncture is engaged in inherently unlawful acts inasmuch as its very existence is an unlawful act, considering that it was created to engage in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons in order to submit fraudulent billing to insurers. Xu Acupuncture likewise is engaged in inherently unlawful acts inasmuch as it continues to attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Xu Acupuncture in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

369. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $130,586.27 pursuant to the fraudulent bills submitted by the Defendants through Xu Acupuncture.

370. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to' 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**TWENTY-THIRD CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

371. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

372. Xu Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

373. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 are employed by and/or associated with the Xu Acupuncture enterprise.

374. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Xu Acupuncture enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than ten months seeking payments that Xu Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent testing and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the

extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "6".

375. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

376. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $130,586.27 pursuant to the fraudulent bills submitted by the Defendants through Xu Acupuncture.

377. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**TWENTY-FOURTH CAUSE OF ACTION**
**Against Xu Acupuncture, Yu, and the Management Defendants**
**(Common Law Fraud)**

378. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

379. Xu Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for the Fraudulent Services.

380. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Xu Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact it was unlawfully owned and controlled by unlicensed laypersons; (ii) in every claim, the representation that Xu Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) in every claim, the representation that Xu Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation was nominally owned on paper by a licensed professional who did not actually practice through it; (iv) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Fee Schedule, when in fact the billed-for services were performed and billed pursuant to a predetermined, fraudulent protocol dictated by laypersons to enrich the Defendants; and (v) in every claim, the representation that the billed-for services were performed by Xu Acupuncture's employees, when in fact the billed-for services were performed – to the extent they were performed at all – by independent contractors.

381. Xu Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Xu Acupuncture that were not compensable under the No-Fault Laws.

382. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $130,586.27 pursuant to the fraudulent bills submitted by the Defendants through Xu Acupuncture.

383. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

384. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-FIFTH CAUSE OF ACTION
**Against Xu Acupuncture, Yu, and the Management Defendants**
**(Unjust Enrichment)**

385. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

386. As set forth above, Xu Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

387. When GEICO paid the bills and charges submitted by or on behalf of Xu Acupuncture for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

388. Xu Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

389. Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

390. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $130,586.27.

**TWENTY-SIXTH CAUSE OF ACTION**
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

391. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

392. KHY Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

393. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, knowingly have conducted and/or participated, directly or indirectly, in the conduct of KHY Acupuncture's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than fourteen months seeking payments that KHY Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed professionals; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) the billed-for-services were performed and billed pursuant to a predetermined, fraudulent treatment and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the

extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "7".

394. KHY Acupuncture's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 operated KHY Acupuncture, inasmuch as KHY Acupuncture never was eligible to bill for or collect No-Fault Benefits, and acts of mail fraud therefore were essential in order for KHY Acupuncture to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity.

395. KHY Acupuncture is engaged in inherently unlawful acts inasmuch as its very existence is an unlawful act, considering that it was created to engage in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons in order to submit fraudulent billing to insurers. KHY Acupuncture likewise is engaged in inherently unlawful acts inasmuch as it continues to attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by KHY Acupuncture in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

396. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $98,607.96 pursuant to the fraudulent bills submitted by the Defendants through KHY Acupuncture.

397. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTY-SEVENTH CAUSE OF ACTION
**Against Yu and the Management Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

398. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

399. KHY Acupuncture is an ongoing "enterprise", as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

400. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 are employed by and/or associated with the KHY Acupuncture enterprise.

401. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the KHY Acupuncture enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis for more than fourteen months seeking payments that KHY Acupuncture was not eligible to receive under the No-Fault Laws because: (i) it was unlawfully owned and controlled by unlicensed laypersons; (ii) it engaged in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii)

the billed-for-services were performed and billed pursuant to a predetermined, fraudulent testing and billing protocol dictated by laypersons and designed to enrich the Defendants; (iv) the billing codes used for the services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges that could be submitted; (v) the Fraudulent Services were performed – to the extent they were performed at all – by independent contractors, and not the Provider Defendants' employees; and (vi) the Fraudulent Services were provided – to the extent they were provided at all – through a professional corporation that was ineligible to bill for or to collect no-fault benefits because it was nominally owned on paper by a licensed professional who did not actually practice through the professional corporation. The fraudulent mailings identified to date submitted to GEICO that comprise the pattern of racketeering activity are described in the chart annexed hereto as Exhibit "7".

402. Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

403. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $98,607.96 pursuant to the fraudulent bills submitted by the Defendants through KHY Acupuncture.

404. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**TWENTY-EIGHTH CAUSE OF ACTION**
**Against KHY Acupuncture, Yu, and the Management Defendants**
**(Common Law Fraud)**

405. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

406. KHY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills seeking payment for the Fraudulent Services.

407. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that KHY Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact it was unlawfully owned and controlled by unlicensed laypersons; (ii) in every claim, the representation that KHY Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation engaged in in a scheme to defraud involving kickbacks, fee-splitting and illegal referral arrangements with unlicensed laypersons; (iii) in every claim, the representation that KHY Acupuncture was properly licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 NYCRR § 65-3.16(a)(12), when in fact the professional corporation was nominally owned on paper by a licensed professional who did not actually practice through it; (iv) in every claim, the representation that the billed-for services were medically necessary and properly billed in accordance with the Fee Schedule, when in fact the billed-for services were performed and billed pursuant to a predetermined, fraudulent protocol dictated by laypersons to

enrich the Defendants; and (v) in every claim, the representation that the billed-for services were performed by KHY Acupuncture's employees, when in fact the billed-for services were performed – to the extent they were performed at all – by independent contractors.

408. KHY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through KHY Acupuncture that were not compensable under the No-Fault Laws.

409. GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $98,607.96 pursuant to the fraudulent bills submitted by the Defendants through KHY Acupuncture.

410. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

411. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-NINTH CAUSE OF ACTION
**Against KHY Acupuncture, Yu, and the Management Defendants**
**(Unjust Enrichment)**

412. GEICO incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

413. As set forth above, KHY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

414. When GEICO paid the bills and charges submitted by or on behalf of KHY Acupuncture for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

415. KHY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10 have been enriched at GEICO's expense by GEICO's payments, which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

416. Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

417. By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $98,607.96.

**JURY DEMAND**

418. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A. On the First Cause of Action against the Provider Defendants, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that the Provider Defendants have no right to receive payment for any pending bills submitted to GEICO;

B. On the Second Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an

amount to be determined at trial but in excess of $289,406.48, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C. On the Third Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $289,406.48, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D. On the Fourth Cause of Action against Jing Luo Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $289,406.48, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

E. On the Fifth Cause of Action against Jing Luo Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, more than $289,406.48 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

F. On the Sixth Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $173,942.10, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

G. On the Seventh Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $173,942.10, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

H. On the Eighth Cause of Action against ZMS&Y Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $173,942.10, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

I. On the Ninth Cause of Action against ZMS&Y Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, more than $173,942.10 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

J. On the Tenth Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $344,893.36, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

K. On the Eleventh Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $344,893.36, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

L. On the Twelfth Cause of Action against Y&Z Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $344,893.36, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

M. On the Thirteenth Cause of Action against Y&Z Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, more than $344,893.36 in

compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

N. On the Fourteenth Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $42,367.77, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

O. On the Fifteenth Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $42,367.77, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

P. On the Sixteenth Cause of Action against CXY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $42,367.77, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

Q. On the Seventeenth Cause of Action against CXY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, more than $42,367.77 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

R. On the Eighteenth Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $90,651.97, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

S. On the Nineteenth Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $90,651.97, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

T. On the Twentieth Cause of Action against NY Care Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $90,651.97, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

U. On the Twenty-First Cause of Action against NY Care Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, more than $90,651.97 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

V. On the Twenty-Second Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $130,586.27, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

W. On the Twenty-Third Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $130,586.27, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

X. On the Twenty-Fourth Cause of Action against Xu Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of

GEICO an amount to be determined at trial but in excess of $130,586.27, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

Y. On the Twenty-Fifth Cause of Action against Xu Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, more than $130,586.27 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

Z. On the Twenty-Sixth Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $98,607.96, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

AA. On the Twenty-Seventh Cause of Action against Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $98,607.96, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

BB. On the Twenty-Eighth Cause of Action against KHY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, compensatory damages in favor of GEICO an amount to be determined at trial but in excess of $98,607.96, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

CC. On the Twenty-Ninth Cause of Action against KHY Acupuncture, Yu, Keselman, Vitas Billing, Zep Enterprises, and John Doe Defendants 1-10, more than $98,607.96 in compensatory damages, plus costs and interest and such other and further relief as this Court

deems just and proper;

Dated: May 25, 2017

RIVKIN RADLER LLP

By:________________________________

Michael A. Sirignano (MS 5263)
Barry I. Levy (BL 2190)
Joshua D. Smith (JS 3989)
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000
*Counsel for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co, GEICO General Insurance Company and GEICO Casualty Co.*